Good morning, Your Honors. I'm Catherine Floyd, here on behalf of Appellant Alberto Monzon. Could you keep your voice up, please? I'll try. Thanks. I'm here on behalf of Appellant Alberto Monzon. I'd like to reserve two minutes for rebuttal. Mr. Monzon is asking for a remand for further proceedings in the district court. I can't hear you. Asking for what? He's asking for a remand for further proceedings in the district court because the trial court failed to comply with the requirements of federal rule of criminal procedure 11 with respect to count 21, which charged Mr. Monzon with possession of a firearm and furtherance of drug trafficking crime. Here, the court failed to ensure that there was sufficient factual basis for the charge with respect to the infurtherance language, and the court failed to properly advise Mr. Monzon of the elements and nature of the charge. The government and I disagree as to the appropriate standard of review to be applied in this case. But, in fact, I think whichever standard you do apply, the result would be the same. Well, if government agrees there was error, I think the question is what's the consequence of that error, right? It's reasonably likely you'd get a different sentence. Is it reasonably likely? I don't know. Well, what do you think? Suppose we go send it back for resentencing. What do you envision taking place? What are you going to argue? Well, it won't be me. Well, you know the record, don't you? To be frank, I'm not sure what he expects to happen. Well, the question is, you know, you say, well, we should send it back. But if we send it back, what can you do that would get a better result? Well, I certainly can't. Just an exercise in futility? Not necessarily. Tell us why not. Well, perhaps the government can't prove this particular charge, and they'll just let him plead to one count instead of two. Well, if you look at the facts, I mean, what it sort of looks like is that they could prove that and more. But, you know, people that have spent time in criminal court, that it's not uncommon for people that even when they plead guilty, they say, well, you know, it really wasn't that bad or anything like that. And really that's their sort of way of putting a gloss on it. But your client, I think when he acknowledged he understood that by pleading guilty he would be giving up his right to require the government to prove all elements of count 21, which was the firearms charge, he had a lawyer, right? Oh, yes. So, you know, it's hard. I'm struggling, and that's, I think, what we want you to tell us is how would his substantial rights be affected because he now disputes one of those documents. Well, his substantial rights are affected because this was a plea hearing, and he wasn't informed of the nature and elements of the crime. So he didn't. You mean his lawyer didn't tell him all the elements of the crime? Nobody knew what the infurtherance, possession infurtherance language meant at that time. It hadn't been addressed by the circuit. In fact, the court talked about use of a firearm infurtherance in relation to a drug trafficking crime. It didn't talk about possession infurtherance. I mean, this is clearly a misinterpretation of the statute, and the defendant shouldn't be held to a. So I gather the possibility is, is that if we were to send it, vacate his conviction on this count, send it back, he could go to trial. He could go to trial, yes. And he could prevail. That's the possibility. And if he prevails, then what? Then he gets a safety valve? He's eligible for the safety valve? Well, he might. What if he goes to trial and gets convicted? Could he get it worse? I think that's also possible, yes. I mean, sometimes no good deed goes unpunished. Well, I think it is clear from the plea colloquy that nobody did, in fact, understand what the elements of this crime were. Mr. Mazan shouldn't be held to the standard of understanding what the crime is. When the court didn't need a trial, the lawyers understood it.  The charge was misdescribed. I think you mean the government agreed that there was an error. The question is, is it reasonably probable that there would be a different outcome to all of this? Well, I'm not sure that's the standard, if it's reasonably probable. The standard is. Are we reviewing for error or for plain error? Well, I think the review is de novo, but, frankly, the result should be the same either way, that he should get a remand for further proceedings. Okay. Would you like to save the rest of your time for rebuttal? Okay. Thank you. Good morning. May it please the Court, counsel. My name is Helen Bruner, and I'm here today to represent the United States. Very simply, I don't believe that the record shows that Mr. Mazan's substantial rights were affected. I don't think the result would be any different here. The Court asked about safety valve, for example. The standard for safety valve would be for the defendant to bear the burden of showing that there is no connection with the drug offense. And I would represent, Your Honor, that the burden under safety valve is a preponderance of the evidence standard. I understand that. But I think that where the drugs are found in the bedroom where the defendant is sleeping with a loaded firearm under the bed covers, it would be pretty difficult for the defendant to then say there was no connection. Didn't he say he liked to collect guns? Is that what he said? Pardon me, Your Honor? It seems to me I read in here someplace that his response to that was he liked to collect guns. I believe that's what he said, and he said, and I believe the record also shows that he said at that time that he obtained the gun for cheap. I think that's a precise quote. Are you saying the government's likely to persist in the prosecution of the gun charge in spite of what happened at the police colloquy, and you know that the, at least at this point, the showing is not adequate? I believe that is correct, Your Honor. Your Honor, is that the kind of case you want to take to the jury on that issue? Your Honor, the irony here is that, of course, in our brief, we did indicate that there was error and that the error was plain. The problem in this case was the discussion in the police colloquy. Right. But I would suggest to Your Honor that Krauss Just a minute. But that indicated the government had, you know, no other evidence at all, right, except the presence of the gun in the room. I believe certainly that that is correct, Your Honor, although I wasn't trial counsel below, so I don't know every nuance of the evidence and cannot give that to Your  But I would suggest, Your Honor, that U.S. v. Krauss, which does describe what the in furtherance language means and defines what the in furtherance language means, talks about firearms being strategically placed in the room with the drugs. I quite frankly think that on this record, with the evidence in this case, particularly with if we were trying this as well with the conspiracy count, which was dismissed as part of this plea bargain, that we might well prevail on the 924 conspiracy count. If he vacates on this, is it your position that then you'd retry him on the conspiracy too? Yes, Your Honor. Because the benefit of the bargain here for this defendant was that we dismissed count one in exchange for the pleas to count 20 and to count 21, count one having a mandatory minimum sentence possible upon conviction of 10 years. So his exposure was greater before the plea bargain? His exposure was a mandatory minimum 15 years because of the 10 on count one, the five on count 20, which is the possession with intent to distribute, and the five on the 924C. All right. Now, we have some idea of the government's position if this case were to be remanded. What we have to decide is, Judge Pius, I think intimated in this questioning of your opponent is, what's the likelihood of the defendant not having entered a guilty plea if he understood, you know, what the required element was for the possession and furtherance of, right? That's correct, Your Honor. Is there some substantial probability that he would not have entered the plea? Is that not the test here? That is the test. That is the test that's set forth. You don't think there is? I don't think so, Your Honor. And let me explain why. Sure. I think this defendant understood certainly the mandatory minimums were explained to him at various times, understood his exposure in this case, and understood that under this plea agreement his exposure was now limited to 10 years. While he took issue with the factual statement in the plea agreement, that one factual statement that talked about in furtherance of, and I would submit actually that the language that he uses suggests that what was troubling him was the idea that he bought the gun for purposes of the drugs. But be that as it may, it seems to me, Your Honor, where the defendant then goes through the entire plea colloquy to include the fact that the judge yet again asked him whether or not he possessed the firearm in furtherance of the drug trafficking offense before, as part of the question when the court was eliciting his guilty plea, and he then says, I plead guilty to that offense, and I understand that the government has to prove this. I don't think that this defendant would have done anything differently. I realize we are, in fact, looking a bit in a crystal ball, but I also think that what has happened here is this man is facing, obviously, his 10-year sentence. The two mandatory minimum sentences were imposed in this case, and he would like to see some way of reducing it. No. Well, I think there's some truth in that. A lot of these plenary cases, it's a matter of buyers and sellers. But still, you know, you look at that plea colloquy, it's easy to get the impression that nobody, including his lawyer, ever really explained to him what the in furtherance of requirement meant. In other words, it's something more than mere possession. I just have the nagging feeling that no one ever explained that to him. And when he got to the point where there was an explanation, he said, oh, no, no, it had nothing to do with the drugs. I just bought it because it was cheap and, you know, I like to collect guns or something like that, right? I believe his precise words, Your Honor, were I did not buy the gun for the drugs, which I think, quite honestly, if I were trying this case, would argue is quite different from actually then possessing. I think there's a difference between the motivation in buying the firearm in the first place and then what you do with it later. But that would be the government's position. If the Court has no further questions for the government, I will ask the Court to adjourn. I think your position is quite clear. Thank you. Thank you. Your Honors, no one did explain to Mr. Monson what it meant to possess a weapon in furtherance of a drug trafficking crime. The Court discussed use of a firearm in connection with the crime. The prosecutor talked about mere possession. Well, what about, though, he was facing 15 and then he lowered it to 10? You know, why isn't this just buyer's remorse? I mean, that was a good deal at the time when you're looking down the barrel and that be careful what you ask for because if they retry him on this, you know, I mean, it isn't unheard of that we see people getting more. I realize that, Your Honor, and I hope Mr. Monson does too. But the fact of the matter is he wishes to proceed with this appeal, and I believe the appeal has merit. With respect to the Krauss case, that case did go to trial, so the issue on appeal was the sufficiency of the evidence where all of the inferences are in favor of the government, and the question is whether any rational charter of fact could have found guilt. Well, it didn't happen here. Mr. Monson was misinformed as to the elements of the crime. He objected at the hearing when the Court asked him, and what the Court did ask him was whether he bought, whether he had the gun to protect the drugs, and that was the nexus between the gun and the crime, and he said no, and the Court accepted his representation that that was not his intent, and Krauss provides that the defendant's intent is what controls in these cases. What about what the government's saying is what he said was that's not why he bought the gun. He didn't say that's not why he possessed the gun. Do you put any, which that, why you bought it and how you use it are two different things. Well, I think he said both. He said he bought it because it was cheap and he likes guns, but he denied when the Court said did you, in fact, have this gun to protect the drugs. He said no, and then he said why he had it. So he was responding to both. So let me see if I just understand the final argument, which is that assuming that he had been properly advised of what infuriants meant, in light of his statement that he gave to the judge, it's reasonably probable that he would have gone, I think we have to assume that it's reasonably probable. He did, in fact, balk twice when he went to court to enter a plea, and it didn't happen. This was at least the third. So that's another factor. Yes. I'll suggest that. He was not that committed to entering. He would have. Yes. He would have stood on his not guilty plea. Yes, Your Honor. Persistent in his not guilty plea. Correct. Okay. Okay. Anything else? I think not. Just ask for a remand. Thank you. Okay. The matter will be submitted. Thank you very much.
judges: Tashima, Paez, Callahan